UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMALA K. SPENCER,

                Plaintiff,

-against-

NYC DEPARTMENT OF EDUCATION,

                Defendant.

Case No. 1:22-cv-10712 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

    Jamala K. Spencer ("Spencer" or "Plaintiff") brings this action against her employer, the NYC Department of Education (the "Department" or "Defendant"). ECF No. 14 (the "First Amended Complaint" or "FAC"). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). FAC ¶¶ 54-78. Before the Court are the Department's motion to dismiss Spencer's First Amended Complaint, ECF No. 19 ("Br."), and Spencer's cross-motion to amend that complaint, ECF No. 34 ("Opp.") For the following reasons, the Department's motion is GRANTED and Spencer's motion is DENIED.

BACKGROUND

    **I.**    **Factual Background**

    Unless otherwise stated, the following facts are taken from the First Amended Complaint and assumed to be true for purposes of this motion. *See Hamilton v. Westchester County*, 3 F.4th 86, 90 (2d Cir. 2021).

    Plaintiff, who is Black, joined the Department in January 2008 as a special-education teacher. FAC ¶¶ 10, 16. She received tenure in 2011 or 2012, after which she trained teachers as

a teacher leader.  *Id.* ¶¶ 11-12.  Beginning in December 2018, Plaintiff worked as a "Preschool Special Education Coordinator" at a pre-kindergarten center in Manhattan, where she opened "self-contained classrooms for pre-school students with delays or cognitive disabilities" with little to no guidance, training, or coaching.  *Id.* ¶¶ 13-15.

On January 17, 2020, then-Superintendent Donalda Chumney, who is White, visited and met with Plaintiff at the school where Plaintiff worked.  *Id.* ¶ 16.  Chumney asked Plaintiff "if parents are present at Individualized Education Program (IEP) meetings," and Plaintiff responded that they "usually" are present.  *Id.* ¶ 17.  After reviewing "three IEPS," Chumney "noticed that a parent's signature was absent on one of them, . . . raised her voice and, in the presence of [then-Preschool] Director [Aneesha] Jacko, colleague Erica Drew, who is white, and two other unknown female colleagues, called [Plaintiff] a liar."  *Id.* ¶¶ 14, 18.  Chumney told Plaintiff in a "demeaning and belittling manner" that she "owed her an apology for lying" and asked for someone who could confirm the truthfulness of Plaintiff's responses.  *Id.* ¶¶ 18-19 (quotation marks omitted).  When Plaintiff told Chumney that someone, in the absence of a parent, had translated for the legal guardian of a student during an annual IEP meeting, Chumney said that she did not believe Plaintiff.  *Id.* ¶ 20.  Chumney accused Plaintiff of "passing the work off on someone else," and said that "the buck stops here."  *Id.* ¶ 21 (quotation marks omitted).  During this meeting, Plaintiff also responded to a question about the number of people present at busing, but Chumney said that she was "more inclined to believe" the "bus matron."  *Id.* ¶ 22.  While leaving, Chumney "threateningly" told Plaintiff that "she would not be pleased" if Chumney's comment were disclosed to the "bus matron."  *Id.* ¶ 23.  According to Plaintiff, Chumney did not threaten or speak to Ms. Drew in the "same belittling, disrespectful manner,"

even though Ms. Drew "could not answer one or more of Chumney's questions" and tried to respond to Chumney's question regarding busing. *Id.* ¶ 24.

Later that day, Jacko gave Plaintiff a letter accusing her of professional misconduct and told her the letter was at Chumney's direction. *Id.* ¶¶ 25-26. On January 22, 2020, during a meeting to address this accusation, Chumney accused Plaintiff of a "dereliction of duty." *Id.* ¶ 27. Chumney did not "level the same accusation at Ms. Drew or any other white colleagues of" Plaintiff. *Id.* ¶ 28. At this meeting, Jacko gave Plaintiff a letter that scheduled a time for the two of them to meet and "address dereliction of duty and failure to follow clear procedures." *Id.* ¶ 29. The letter also noted that "this conference may lead to disciplinary action." *Id.*

On January 23, 2020, Chumney again visited the school where Plaintiff worked and addressed her in a "disrespectful manner" in front of two classrooms of preschool students, teachers, paraprofessionals, and a service provider. *Id.* ¶ 30. On January 24, 2020, Plaintiff met with Jacko; Jacko reiterated Chumney's allegation that Plaintiff had engaged in a dereliction of duty. *Id.* ¶ 31. Chumney visited the school where Plaintiff worked twice more in January 2020 and once in February 2020. *Id.* ¶ 32. These visits caused Plaintiff "such apprehension that, on two occasions, she locked herself in a closet until after Chumney had left." *Id.*

On February 4, 2020, Plaintiff filed a complaint with the Department's "Office of Equal Opportunity," in which she listed her color and race as the bases for her discrimination. *Id.* ¶¶ 33-34. A "Joint Committee" investigated Plaintiff's complaint and informed her on August 11, 2021, that it had concluded that there was "substantial evidence" that Chumney had subjected Plaintiff to a "course of harassing conduct." *Id.* ¶¶ 39-40. The committee listed, as "[a]mong the most egregious examples of this harassment," instances where Chumney called Plaintiff "a liar and demand[ed] an apology in front of colleagues"; asked Plaintiff "in a loud and harsh tone to

3

count the number of adults in a classroom 3 times in front of children and adults"; and asked staff and students about Plaintiff, without permission, "in an effort to discredit" her.  *Id.* ¶ 40.  No remedial measures were taken after this finding.  *Id.* ¶ 41.

Sometime in June 2020, Plaintiff applied for "the Preschool Special Education Coordinator and Site Coordinator positions," but Chumney "attempted to negatively influence the interview process" in retaliation for Plaintiff filing her complaint with the Department's Office of Equal Opportunity.  *Id.* ¶¶ 35-36.  Plaintiff also was "denied the opportunity to attend training sessions that were specific to special education," even though she supervised special-education classes.  *Id.* ¶ 37.  Ms. Drew was permitted to attend these training sessions.  *Id.*

On January 31, 2022, Plaintiff received a notice from the Office of Special Investigations (the "OSI") that she was being investigated for "employee misconduct."  *Id.* ¶¶ 38, 44.  The investigation "purportedly arose" in August 2020 "out of 'an anonymous complainant who reported that Principal Jacko gave Ms. Spencer a job . . . for which Ms. Spencer was not qualified.'"  *Id.* ¶ 45 (brackets omitted).  Several of Plaintiff's colleagues became aware of this investigation and treated her differently during the 2021-2022 school year.  *Id.* ¶ 48.  Site Coordinator Lisa Galeano shouted at Plaintiff on October 5, 2021, September 21, 2021, and April 7, 2022.  *Id.* ¶¶ 49-50.  Angela Rodriguez, the interim acting assistant principal, was aware of these incidents but took no remedial action.  *Id.* ¶ 51.

As a result of the alleged actions, Plaintiff took a medical leave of absence in August 2022. *Id.* ¶¶ 52-53.

## II.   Procedural History

On April 7, 2022, Spencer filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC").  *Id.* ¶ 5.  On September 21, 2022, the EEOC issued Spencer a notice of right to sue.  *Id.* ¶ 6.

4

Spencer brought this action on December 20, 2022. *See generally* ECF No. 1. The Department moved to dismiss Spencer's initial complaint on March 20, 2023. ECF No. 12. In response, Spencer filed the operative First Amended Complaint on April 10, 2023. *See* FAC. The Department moved to dismiss the First Amended Complaint on May 8, 2023. *See* Br. The motion is now fully briefed and presently before the Court. *See* Opp.; ECF No. 38 ("Reply").

### III. Applicable Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations of fact. *Id.* However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

In her First Amended Complaint, Spencer brings hostile-work-environment claims under Title VII and the NYSHRL, as well as discrimination and retaliation claims under the NYCHRL. FAC ¶¶ 54-78. The Department argues that most of the acts underlying Spencer's Title VII hostile-work-environment claim are time barred, and that Spencer has otherwise failed to adequately plead her claims under Title VII, the NYSHRL, and the NYCHRL. *See generally* Br.

The Court first addresses these arguments as to Spencer's Title VII claim.

I. **Title VII Hostile-Environment Claim**

   A. **Timeliness**

Under Title VII, a prospective plaintiff must file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023).[1] "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period." *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 444 (S.D.N.Y. 2023) (citation omitted).

Typically, every discrete act that allegedly violates Title VII "gives rise to a freestanding . . . claim with its own filing deadline." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). The continuing-violation doctrine, however, provides an exception to the 300-day rule. *See Banks*, 81 F.4th at 259. "It applies to claims 'composed of a series of separate acts that collectively constitute one unlawful practice.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (brackets omitted) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). The doctrine thus applies to hostile-work-environment claims because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see Chin*, 685 F.3d at 156 (reading *Morgan* to apply the continuing-violation doctrine to hostile-work-environment claims). Unlike discrete acts, "incidents that give rise to a hostile work environment 'occur over a series of days or perhaps years.'" *Banks*, 81

---

[1] "Pursuant to a work-sharing agreement between New York and the federal government, . . . any charge filed with the EEOC is also deemed filed with the appropriate state agency." *Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, 20-cv-04290 (DLC), 2021 WL 1999466, at *5 n.2 (S.D.N.Y. May 19, 2021). Therefore, the 300-day period applies here.

F.4th at 260 (brackets omitted) (quoting *Morgan*, 536 U.S. at 115).  Therefore, courts may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, . . . so long as an act contributing to that hostile environment takes place within the statutory time period."  *Morgan*, 536 U.S. at 105.

Whether an act contributes to a hostile work environment turns on whether it is "sufficiently related" to the other alleged conduct.  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010).  Courts must "make an individualized assessment of whether incidents and episodes are related."  *Id.*  Among the factors that a court may consider are "whether the harasser was the same," "the frequency of the conduct," and the lapse in time between acts.  *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 314 (S.D.N.Y. 2022) (collecting cases).

Spencer filed her charge with the EEOC on April 7, 2022.  FAC ¶ 5.  Therefore, the only events that are timely under Title VII must have occurred on or after June 11, 2021 (that is, 300 days before Spencer filed her charge).  The only conduct complained of after June 11, 2021 – and therefore the only alleged discriminatory acts that could "take[] place within the statutory time period," *Morgan*, 536 U.S. at 105 – are Spencer's receipt of notice that she was being investigated for employee misconduct and the three instances over a six-month period that Galeano yelled at her, FAC ¶¶ 38, 50.  Accordingly, unless one of these acts contributed to her hostile-work-environment claim, Spencer's claim is time barred.[2]

The Court finds that Spencer's post-June 11, 2021 allegations are not sufficiently related

---

[2] Spencer does not state in her First Amended Complaint when she was "denied the opportunity to attend [special-education] training sessions."  FAC ¶ 37.  Yet she suggests in opposing the Department's motion to dismiss that this denial occurred before August 2020.  Opp. at 11.  She also suggests that Chumney was behind this denial, *id.*, but alleges that Chumney left the Department on November 30, 2020, FAC ¶ 47.  Therefore, the Court understands that the conduct underlying this allegation occurred before June 11, 2021.

to her earlier ones. They neither occurred "within the span of the same year," nor were they "primarily perpetrated by the same person." *Delo v. Paul Taylor Dance Found., Inc.*, --- F. Supp. 3d ----, 2023 WL 4883337, at *9 (S.D.N.Y. Aug. 1, 2023). Galeano's instances of yelling are plainly unrelated to the rest of Spencer's allegations. Spencer does not suggest that Galeano had any involvement with or knowledge of Chumney's conduct between January and June 2020. Nor does she explain how Galeano "treated her differently" upon learning of the investigation when two of the three incidents of yelling occurred before Spencer herself learned of the investigation. *See* FAC ¶¶ 44, 48-50. As for Spencer's notice that she was being investigated for employee misconduct, Spencer does not suggest that her notice of the OSI investigation itself contributed to a hostile work environment. Insofar as Spencer suggests that Chumney made the anonymous complaint in August 2020 that spurred the investigation, *id.* ¶¶ 45-47, that complaint occurred before June 11, 2021. Without more, the Court does not see a connection between acts taken by Chumney in 2020 and acts taken by other people after June 11, 2021. *See McGullam*, 609 F.3d at 78 ("Although [an] incident-free interval does not preclude relatedness, it renders less plausible the notion that" comments that may appear otherwise unrelated are "of a piece" with other offensive conduct). Because they are not sufficiently related to the incidents that fell within the statute of limitations, Spencer's pre-June 11, 2021 allegations are not actionable as part of her hostile-work-environment claim.

In her opposition brief, Spencer argues that she has alleged a pattern of discriminatory and retaliatory treatment to which the continuing-violations doctrine applies. Opp. at 11-13. However, she makes little effort to link her untimely allegations with her timely ones. Spencer notes only that the investigation into her possible misconduct "caused several of [Spencer's] colleagues to treat her differently," including Galeano, who yelled at her on at least three

occasions after June 11, 2021.  *Id.* at 12 (citing FAC ¶¶ 48-52).  Yet Spencer does not allege that Galeano knew the anonymous complainants behind the investigation, or that Galeano was trying to perpetuate a hostile work environment by yelling at Spencer.  That Galeano knew of an investigation – an investigation that Spencer does not allege was itself discriminatory (as opposed to the August 2020 complaint) – is not enough to connect her yelling to Spencer's untimely allegations of a hostile work environment.  These allegations are also not comparable to cases that Spencer cites where a hostile-work-environment claim contained a timely act either committed by the same supervisor or part of a clear practice of discrimination.  *See Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-cv-02512 (CM), 2022 WL 524551, at *6 (S.D.N.Y. Feb. 22, 2022) (same supervisor "targeted [the plaintiff] by forcing him to roll out a new Windows operating systems"); *Thomas v. City of New York*, No. 507887/2018, 2019 WL 6041948, at *3 (N.Y. Sup. Ct. Nov. 1, 2019) (assignment to plaintiff of administrative duties that "were inappropriate for her position" deemed sufficiently similar to denial of "permission to work in an after-school program, a bathroom and office key and the necessary equipment for her profession").

### B. Merits

The Court turns next to whether the post-June 11, 2021 conduct alleged states a claim for a hostile work environment.  To state a hostile-work-environment claim under Title VII, Spencer must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320-321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Spencer must "plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or

abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (quotation marks, ellipsis, and citation omitted); *see Kirkland-Hudson*, 665 F. Supp. 3d at 465 ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable only when it occurs because of an employee's protected characteristic." (brackets, quotation marks, ellipsis, and citation omitted)).

To determine whether a plaintiff suffered a hostile work environment, a court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris,* 510 U.S. at 23). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

Spencer does not adequately plead a Title VII hostile-work-environment claim because she does not suggest that the timely incidents in her First Amended Complaint "occurred because of a protected characteristic." *Tolbert*, 790 F.3d at 439. The two timely allegations – Spencer's notice of an internal investigation and Galeano's yelling – lack any connection to Spencer's race or color. Spencer does not specify how these incidents are linked to those protected characteristics. *See* FAC ¶¶ 38, 44, 50. The closest Spencer gets to making this connection is her suggestion that the investigation was initiated in retaliation for her discrimination complaint.

*Id.* ¶ 38. Yet Spencer does not claim that Galeano knew who initiated the investigation and what their motives were in doing so. Nor does she describe what Galeano said or plead any details to suggest that Galeano acted with a race-based animus towards Spencer. The timely facts alleged do not link the workplace hostility Spencer allegedly encountered to her race or color. *See Tolbert*, 790 F.3d at 439.

Even if the Court considered all of Spencer's untimely allegations, it would find that Spencer has failed to allege that these incidents were sufficiently severe or pervasive to create a hostile work environment. *See Kirkland-Hudson*, 665 F. Supp. 3d at 466 ("Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." (quoting *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018))). Across her First Amended Complaint, Spencer alleges that Chumney made "demeaning and belittling" comments in one meeting, addressed her "in a disrespectful manner" during another, accused her of a "dereliction of duty," and attempted to undermine her job-interview process for two positions; Spencer also alleges that she was kept from participating in special-education training sessions, investigated for employee misconduct, and that Galeano yelled at her on three occasions over a six-month period. FAC ¶¶ 18-23, 27, 30, 36-38, 50. These allegations do not paint the picture of a work environment that is so severe or pervasive as to have altered the conditions of Spencer's employment.

In *Small v. New York City Department of Education*, 650 F. Supp. 3d 89 (S.D.N.Y. 2023), a court in this District granted the Department's motion to dismiss despite allegations of conduct far more severe than that alleged here. The plaintiff, also a teacher for the Department, alleged that his principal yelled at him in front of others, undermined his disciplinary decisions,

11

questioned parents about the plaintiff's sexuality and stated that she did not like him because he is gay, placed him on a teacher improvement plan, subjected him to a coercive investigation, required his class to be observed by a colleague, and ultimately terminated him. *Id.* at 101. The court concluded that the plaintiff's allegations did "not amount to conduct so severe or pervasive that they state a plausible hostile work environment claim under Title VII." *Id.* Here, Spencer's allegations fall far short of those deemed insufficient in *Small* and in other cases in this Circuit. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (describing as "quite minor" plaintiff's allegations that defendants "wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19-cv-00997 (PAE), 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (no hostile work environment where the plaintiff's supervisor publicly questioned plaintiff about his disability, yelled at or was aggressive towards him on four occasions over three months, and referred to the plaintiff as a "faggot" in another language); *Davis-Molinia v. Port Auth. of N.Y. & N.J.,* No. 08-cv-07586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (no hostile work environment despite the employer yelling at and talking down to the plaintiff in front of staff, excluding the plaintiff from meetings, questioning overtime hours, avoiding the plaintiff, speaking rudely, diminishing job responsibilities, and more), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order); *Liburd v. Bronx Leb. Hosp. Ctr.*, No. 07-cv-11316 (HB), 2009 WL 900739, at *1, 8 (S.D.N.Y. Apr. 3, 2009) (no hostile work environment where plaintiff alleged that supervisor ignored and spoke to her harshly at meetings, scolded her for not following the chain of command in seeking consent to attend a conference, threatened to transfer her to another department, denied a transfer to the supervisor of her choice,

gave her extra duties, stripped her of other duties, referred to her as "black ass" on three occasions, closely monitored her, gave unrealistic time periods to complete tasks, eliminated programs that the plaintiff had implemented, and ultimately terminated plaintiff and replaced her with a white female), *aff'd*, 372 F. App'x 137, 139-40 (2d Cir. 2010) (summary order).

Spencer argues that the issue of whether her allegations create a hostile work environment "involves a question of fact" that is "generally inappropriate to determine at the pleadings stage." Opp. at 14 (quoting *Mondelo*, 2022 WL 524551, at *9). Yet even accepting Spencer's allegations as true and drawing all inferences in her favor, the Court concludes that Chumney's comments across three meetings, her meddling in Spencer's job interviews and training sessions, the investigation, and Galeano's yelling – while upsetting – did not leave Spencer's workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21.

Therefore, the Court grants the Department's motion to dismiss Spencer's hostile-work-environment claim under Title VII.

## II. Supplemental Jurisdiction

Spencer's NYSHRL and NYCHRL claims "require application of a different standard with which the state courts are more familiar." *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 394 (S.D.N.Y. 2013).[3] The Court therefore declines to exercise supplemental jurisdiction

---

[3] "Until recently, hostile work environment claims under the NYSHRL were governed by the same standard as federal law claims brought under Title VII." *Wheeler v. Praxair Surface Techs., Inc.*, --- F. Supp. 3d ----, 2023 WL 6282903, at *10 (S.D.N.Y. Sep. 26, 2023). In 2019, however, the New York State Legislature amended the NYSHRL, "the effect of which is to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). Amendments to the NYSHRL apply only to claims that accrue on or after October 11, 2019. *See Stanley v. Mt. Sinai Health Sys., Inc.*, No. 21-cv-04619 (VEC), 2023 WL 8355393, *9 (S.D.N.Y. Dec. 1, 2023). The NYCHRL, in turn,

over Spencer's NYSHRL and NYCHRL claims, which are dismissed without prejudice to refile in state court. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [once] the district court has dismissed all claims over which it has original jurisdiction"); *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 107 (2d Cir. 2022) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (brackets and citation omitted)).

## III. Leave to Amend

Spencer also requests leave to file a proposed Second Amended Complaint. Opp. at 8-9; *see* ECF No. 33-1 (the proposed "Second Amended Complaint," or "SAC"). "Once a responsive pleading has been filed, [the] plaintiff may amend the complaint only with leave of court." *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation omitted). Under Rule 15(a)(2), leave to amend a complaint shall be "freely" given "when justice so requires." However, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Motions for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

---

sets out a more liberal standard than Title VII's standard for discrimination and retaliation claims. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-112 (2d Cir. 2013).

The Court denies Spencer leave to file a Second Amended Complaint because her proposed amendments are futile. Spencer seeks to add a hostile-work-environment claim under 42 U.S.C. § 1981 ("Section 1981"). SAC ¶¶ 68-71. However, the Second Circuit has held that Section 1981 "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018); *see Nnebe v. City of New York*, No. 22-cv-03860 (VEC) (SLC), 2023 WL 2393920, at *7 (Jan. 30, 2023) (applying *Duplan*'s holding to plaintiff's Section 1981 claim against the Department), *report and recommendation adopted*, 2023 WL 2088526 (S.D.N.Y. Feb. 17, 2023). Even if construed as brought under 42 U.S.C. § 1983, Spencer's claim still fails because she "has failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as required to maintain a § 1983 action against a municipality." *Duplan*, 888 F.3d at 621 (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)).

As for her existing Title VII claim, Spencer's proposed Second Amended Complaint offers just three new substantive allegations: (1) in November 2021, a school aide told Spencer that she was being investigated and that she "had been informed" that the investigation had resulted from a complaint filed by Chumney and Erica Drew, SAC ¶ 38; (2) in February 2022, Spencer met with the OSI investigator, who informed her of the various allegations in the complaint, *id.* ¶ 49; and (3) the investigator requested documentation from Spencer in connection with these allegations, *id.* ¶ 50.[4] These allegations add new details about the OSI investigation

---

[4] Spencer also seeks to attach the complaint she filed with the Office of Equal Opportunity, the notice of OSI's investigation, dated January 31, 2022, a letter from the United Federation of Teachers about the Joint Committee's finding that Spencer was subject to harassment, and an "Unsubstantiated Case Memorandum," dated September 22, 2021, that appears to conclude that Chumney did *not* engage in retaliation, impede an investigation, or otherwise engage in misconduct. SAC at 15-26.

but do not otherwise suggest that the investigation itself "contribut[ed] to [Spencer's] hostile environment." *Morgan*, 536 U.S. at 105.  Therefore, for the reasons discussed above, Spencer's pre-June 11, 2021 allegations are not "sufficiently related" to her post-June 11, 2021 allegations in the Second Amended Complaint and remain unactionable.  *McGullam*, 609 F.3d at 77.  In addition, Spencer does not allege additional facts postdating June 11, 2021, that are "sufficiently severe or pervasive" to "create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-321.  Therefore, the Court denies Spencer leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss.  Plaintiff's claim under Title VII is dismissed with prejudice.  Because the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, they are dismissed without prejudice to refile in state court.  The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 18 and 32 and to close the case.

Dated: February 15, 2024
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge